# 13-872-cv

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

KELLEY S. O'BRIEN,
Plaintiff-Appellant,

v.

ROBERT BARROWS, Police Officer, Shelburne Police Department, JAMES WARDEN, Chief,
Shelburne Police Department, TOWN MANAGER OF SHELBURNE, and
TOWN OF SHELBURNE,
Defendants-Appellees,

SHELBURNE POLICE DEPARTMENT,
Defendant.

---

ON APPEAL FROM A RULING OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

---

BRIEF OF APPELLEES
ROBERT BARROWS and TOWN OF SHELBURNE

---

James F. Carroll, Esq.
English, Carroll & Boe, PC
64 Court Street
Middlebury, VT 05753
(802) 388-6711

Nancy Goss Sheahan, Esq.
McNeil, Leddy & Sheahan, PC
271 South Union Street
Burlington, VT 05401
(802) 863-4531

Kevin J. Coyle, Esq.
McNeil, Leddy & Sheahan, PC
271 South Union Street
Burlington, VT 05401
(802) 863-4531

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...............................1

STATEMENT OF THE CASE....................................................................1

STATEMENT OF THE FACTS .................................................................2

SUMMARY OF THE ARGUMENT ...........................................................3

ARGUMENT ...................................................................................4

    I.    STANDARD OF REVIEW .................................................4

    II.    OFFICER BARROWS'S USE OF DEADLY FORCE TO PROTECT HIMSELF AS WELL AS INNOCENT BYSTANDERS AND MOTORISTS FROM THE DANGER THAT O'BRIEN CREATED WITH HIS AUTOMOBILE DID NOT CONSTITUTE EXCESSIVE FORCE UNDER THE FOURTH AMENDMENT ................................6

        A.    O'BRIEN POSED A GRAVE RISK OF HARM TO OFFICER BARROWS .................................................12

        B.    O'BRIEN POSED A GRAVE RISK OF HARM TO INNOCENT BYSTANDERS AND MOTORISTS ....................19

    III.    IN THE ALTERNATIVE, OFFICER BARROWS IS ENTITLED TO QUALIFIED IMMUNITY CONCERNING HIS USE OF DEADLY FORCE UNDER THESE CIRCUMSTANCES ......................................24

    IV.    IN THE ALTERNATIVE, O'BRIEN CANNOT SATISFY ANY OF THE ESSENTIAL ELEMENTS OF A FAILURE-TO-TRAIN CLAIM AGAINST THE TOWN............................................36

CONCLUSION ..................................................................................43

TABLE OF AUTHORITIES

CASES

*Abraham v. Raso,* 183 F.3d 279 (3d Cir. 1999)..........................................34

*Amore v. Novarro,* 624 F.3d 522 (2d Cir. 2010) ........................................24

*Anderson v. Creighton,* 483 U.S. 635 (1987) ............................................24, 27, 30-31

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)................................5

*Ashcroft v. Al-Kidd,* — U.S. —, 131 S. Ct. 2074 (2011)...........................24, 26-27, 35

*Bash v. Patrick,* 608 F. Supp. 2d 1285 (M.D. Ala. 2009) ..........................42

*Batista v. Rodriguez,* 702 F.2d 393 (2d Cir. 1983)....................................36

*Beckford v. City of New Haven,* 2011 WL 6153182 (D. Conn. 2011) .......42

*Board of Commissioners of Bryan County v. Brown,* 520 U.S. 397 (1997)...............36, 38-40

*Bourn v. Bull,* 2013 WL 1285858 (D. Vt. 2013) .......................................30

*Bourn v. Gauthier,* 2011 WL 1211569 (D. Vt. 2011) ................................41

*Bourn v. Town of Bennington,* 2012 WL 2396875 (D. Vt. 2012) ..............36

*Boyd v. City of New York,* 336 F.3d 72 (2d Cir. 2003)...............................9-10

*Brady v. Syracuse Police Department,* 2013 WL 286281 (N.D.N.Y.), *report & recommendation adopted,* 2013 WL 286283 (N.D.N.Y. 2013).......................37

*Brosseau v. Haugen,* 543 U.S. 194 (2004) ...............................................7, 10, 19, 28-30, 33

*Buckley v. Haddock,* 292 Fed. Appx. 791 (11th Cir. 2008), *cert. denied sub nom., Buckley v. Rackard,* — U.S. —, 129 S. Ct. 2381 (2009) .................8

*Caceres v. Port Authority of New York & New Jersey,* 631 F.3d 620 (2d Cir. 2011).24-25

*Caldarola v. Calabrese,* 298 F.3d 156 (2d Cir. 2002)..................................................28

*Carey v. Cassista,* 939 F. Supp. 136 (D. Conn. 1996)..................................................7

*Cifra v. General Electric Co.,* 252 F.3d 205 (2d Cir. 2001)........................................4

*City of Canton v. Harris,* 489 U.S. 378 (1989)..........................................................37-38, 40

*City of Los Angeles v. Heller,* 475 U.S. 796 (1986) ....................................................12

*City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985) ................................................37-38

*City of Springfield, Massachusetts v. Kibbe,* 480 U.S. 257 (1987) ............................38

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988) ..................................................37

*Cole v. Bone,* 993 F.2d 1328 (8th Cir. 1993)...............................................................10, 22

*Connick v. Thompson,* — U.S. —, 131 S. Ct. 1350 (2011)..........................................39-40

*Costello v. City of Burlington,* 632 F.3d 41 (2d Cir. 2011) ........................................43

*Costello v. Town of Warwick,* 273 Fed. Appx. 118 (2d Cir. 2008) ............................16

*Cowan ex rel. Estate of Cooper v. Breen,* 352 F.3d 756 (2d Cir. 2003) ....................9-11, 16, 33

*Crowell v. Kirkpatrick,* 667 F. Supp. 2d 391 (D. Vt. 2009), *aff'd,* 400 Fed. Appx.
      592 (2d Cir. 2010)............................................................................................5-8, 29-31

*Curley v. Village of Suffern,* 268 F.3d 65 (2d Cir. 2001) ...........................................12

*Davis v. Scherer,* 468 U.S. 183 (1984) ......................................................................31

*Devenpeck v. Alford,* 543 U.S. 146 (2004) ................................................................10

*Doninger v. Niehoff,* 642 F.3d 334 (2d Cir.), *cert. denied,* — U.S. —, 132 S. Ct.
      499 (2011).....................................................................................................32-33, 35

*Dwares v. City of New York,* 985 F.2d 94 (2d Cir. 1993)..............................................39

*Eckardt v. City of White Plains,* 930 N.Y.S.2d 22 (N.Y. App. Div. 2011) ................40-41

*Elder v. Holloway,* 510 U.S. 510 (1994) ...................................................................6

*Elliott v. Leavitt,* 99 F.3d 640 (4th Cir. 1996), *cert. denied,* 521 U.S. 1120 (1997) ...18

*Finigan v. Marshall,* 574 F.3d 57 (2d Cir. 2009) ......................................................26

*Francis v. Hartford Police Department,* 2012 WL 4815596 (D. Conn. 2012)...........37

*Gallegos v. Freeman,* 291 P.3d 265 (Wash. Ct. App. 2013), *review denied,* — P.3d
    — (Wash. 2013) (table) ................................................................19, 26, 28,
                                                                                        33

*Gold v. City of Miami,* 151 F.3d 1346 (11th Cir. 1998) ............................................40

*Goldberg v. Town of Glastonbury,* 453 Fed. Appx. 40 (2d Cir. 2011) ......................27

*Graham v. Connor,* 490 U.S. 386 (1989) .................................................................7-9

*Greenwald v. Town of Rocky Hill,* 2011 WL 4915165 (D. Conn. 2011) ...................17

*Gregoire v. Biddle,* 177 F.2d 579 (2d Cir. 1949), *cert. denied,* 339 U.S. 949 (1950).24

*Harlen Assocs. v. Incorporated Village of Mineola,* 273 F.3d 494 (2d Cir. 2001).....4-5

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) .............................................................25, 28-29
                                                                                        32-33

*Hathaway v. Baxany,* 507 F.3d 312 (5th Cir. 2007) ..................................................15-16, 26

*Hernandez v. City of New York,* 2004 WL 2624675 (S.D.N.Y. 2004).......................7

*Hubacz v. Protzman,* 2013 WL 1386287 (D. Vt. 2013) ............................................26

*Hunter v. Town of Shelburne,* 2012 WL 4320673 (D. Vt. 2012) ...............................7

*Jackson v. City of Bremerton,* 268 F.3d 646 (9th Cir. 2001)......................................12

*Jones v. Parmley,* 465 F.3d 46 (2d Cir. 2006) ...........................................................7

*Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied sub nom., Employee-Officer John, #1765 Badge Number v. Johnson,* 414 U.S. 1033 (1973) .......................8-9

*Kerman v. City of New York,* 261 F.3d 229 (2d Cir. 2001) .........................................26-27, 29

*Koch v. Town of Brattleboro,* 287 F.3d 162 (2d Cir. 2002) .......................................27

*Krause v. Penny,* 837 F.2d 595 (2d Cir. 1988) ...........................................................31

*Ladd v. Thibault,* 402 Fed. Appx. 618 (2d Cir. 2010), *cert. denied,* — U.S. —, 131 S. Ct. 1697 (2011)..........................................................................................27

*Lee v. Sandberg,* 136 F.3d 94 (2d Cir. 1997)..............................................................6

*Leeds v. Meltz,* 85 F.3d 51 (2d Cir. 1996) ..................................................................39

*Lennon v. Miller,* 66 F.3d 416 (2d Cir. 1995)..............................................................7, 30-32

*Long v. Slaton,* 508 F.3d 576 (11th Cir. 2007), *cert. denied,* 555 U.S. 1069 (2008)..15-16, 19, 23, 26, 28, 33, 35, 42

*Lytle v. Bexar County, Texas,* 560 F.3d 404 (5th Cir. 2009), *cert. denied sub nom., Bexar County, Texas v. Lytle,* 559 U.S. 1007 (2010) .......................................34

*Malley v. Briggs,* 475 U.S. 335 (1986) .......................................................................25-26

*Martin v. Dishong,* 102 Fed. Appx. 780 (4th Cir. 2004) .............................................19

*Martinez v. Simonetti,* 202 F.3d 625 (2d Cir. 2000) ...................................................6

*Martinez v. State of California,* 444 U.S. 277 (1980)...................................................38

*McCullough v. Antolini,* 559 F.3d 1201 (11th Cir. 2009)............................................9, 11, 15, 26

*McEvoy v. Spencer,* 124 F.3d 92 (2d Cir. 1997)..........................................26

*Moffett v. Town of Poughkeepsie,* 2012 WL 3740724 (S.D.N.Y. 2012)....................38

*Monell v. Department of Social Services,* 436 U.S. 658 (1978)..................36

*Moore v. Andreno,* 505 F.3d 203 (2d Cir. 2007) ..........................................26, 29

*Moore v. Vega,* 371 F.3d 110 (2d Cir. 2004)..............................................29-30

*Norton v. Sam's Club,* 145 F.3d 114 (2d Cir.), *cert. denied,* 525 U.S. 1001 (1998)...2, 43

*O'Bert ex rel. Estate of O'Bert v. Vargo,* 331 F.3d 29 (2d Cir. 2003) ........................9, 33

*O'Brien v. Barrows,* 2013 WL 486655 (D. Vt. 2013)................................1-3, 14-15, 20, 41-42

*Pearson v. Callahan,* 555 U.S. 223 (2009).................................................24, 29-30

*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) .................................36-37

*Powell v. Gardner,* 891 F.2d 1039 (2d Cir. 1989).......................................36

*Rathbun v. DiLorenzo,* 438 Fed. Appx. 48 (2d Cir. 2011) ........................................31

*Rivers v. Fischer,* 390 Fed. Appx. 22 (2d Cir. 2010) .................................29

*Robison v. Via,* 821 F.2d 913 (2d Cir. 1987) ............................................8-9

*Roe v. City of Waterbury,* 542 F.3d 31 (2d Cir. 2008), *cert. denied,* 558 U.S. 933 (2009)...........................................................................39

*Ryburn v. Huff,* — U.S. —, 132 S. Ct. 987 (2012)......................................32

*Salim v. Proulx,* 93 F.3d 86 (2d Cir. 1996).............................................10

*Sanborn v. Jennings,* 2013 WL 4040391 (D. Vt. 2013) ............................................25, 32

*Saucier v. Katz,* 533 U.S. 194 (2001), *overruled on other grounds, Pearson v. Callahan,* 555 U.S. 223 (2009).......................................................6, 24, 27-

28, 30, 35-36

*Scott v. Clay County, Tennessee,* 205 F.3d 867 (6th Cir.), *cert. denied,* 531 U.S. 874 (2000).................................................................................19

*Scott v. Edinburg,* 346 F.3d 752 (7th Cir. 2003) ........................................22-23, 34-35

*Scott v. Fischer,* 616 F.3d 100 (2d Cir. 2010) ............................................27

*Scott v. Harris,* 550 U.S. 372 (2007) ..........................................................5, 9, 11, 19, 23, 33

*SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133 (2d Cir. 2009)........5

*Siegert v. Gilley,* 500 U.S. 226 (1991).........................................................6

*Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.), *cert. denied,* 504 U.S. 915 (1992)....10, 19, 22

*Sound Aircraft Services, Inc. v. Town of East Hampton,* 192 F.3d 329 (2d Cir. 1999) ............................................................................................28

*Sprague v. Nally*, 2005 VT 85, 178 Vt. 222 (2005).....................................26

*State of Connecticut ex rel. Blumenthal v. Crotty,* 346 F.3d 84 (2d Cir. 2003) ..........6, 25

*Swanson v. Powers,* 937 F.2d 965 (4th Cir. 1991), *cert. denied,* 502 U.S. 1031 (1992)..................................................................................................33

*Sykes v. United States,* — U.S. —, 131 S. Ct. 2267 (2011) .......................11

*Taylor v. Brentwood Union Free School District,* 143 F.3d 679 (2d Cir. 1998), *cert. denied sub nom., Taylor v. Rooney,* 525 U.S. 1139 (1999) ....................38

*Tennessee v. Garner,* 471 U.S. 1 (1985).....................................................9, 33

*Terrell v. Smith,* 668 F.3d 1244 (11th Cir. 2012) .......................................11, 14-16, 26, 28

*Towsley v. Frank,* 2010 WL 5394837 (D. Vt. 2010) .................................................. 7-8

*Tracy v. Freshwater,* 623 F.3d 90 (2d Cir. 2010) ........................................................ 6, 25

*Treon v. Whipple,* 212 F. Supp. 2d 285 (D. Vt. 2002) .................................................. 43

*Tucker v. Maher,* 497 F.2d 1309 (2d Cir.), *cert. denied,* 419 U.S. 997 (1974) ........... 29

*United States v. Aceves-Rosales,* 832 F.2d 1155 (9th Cir. 1987), *cert. denied sub nom., Aceves-Rosales v. United States,* 484 U.S. 1077 (1988) ........................ 10

*United States v. Bakhtiari,* 913 F.2d 1053 (2d Cir. 1990), *cert. denied sub nom., Bakhtiari v. United States,* 499 U.S. 924 (1990) ............................................... 10

*United States v. Sanchez,* 914 F.2d 1355 (9th Cir. 1990), *cert. denied,* 499 U.S. 978 (1991) .......................................................................................................... 10

*United States v. Zichettello,* 208 F.3d 72 (2d Cir. 2000), *cert. denied sub nom., Lysaght v. United States,* 531 U.S. 1143 (2001) ............................................... 2, 43

*Vanvorous v. Burmeister,* 96 Fed. Appx. 312 (6th Cir. 2004) ..................................... 13

*Vippolis v. Village of Haverstraw,* 768 F.2d 40 (2d Cir. 1985) .................................. 38

*Waterman v. Batton,* 393 F.3d 471 (4th Cir. 2005) ..................................................... 18, 23, 34

*Weinstock v. Columbia University,* 224 F.3d 33 (2d Cir. 2000) .................................. 4

*Wilkinson v. Torres,* 610 F.3d 546 (9th Cir. 2010) ...................................................... 15-16

*Williams v. City of Grosse Pointe Park,* 496 F.3d 482 (6th Cir. 2007) ...................... 16-17

*Wilson v. Layne,* 526 U.S. 603 (1999) ......................................................................... 25

*Wilson v. Tillman,* 613 F. Supp. 2d 1254 (S.D. Ala. 2009) ......................................... 39

*Woodward v. Town of Brattleboro,* 2006 WL 36906 (D. Vt. 2006) ............................ 16-17, 33

*Walczyk v. Rio,* 496 F.3d 139 (2d Cir. 2007) .............................................................. 29-31

*Young v. County of Fulton,* 160 F.3d 899 (2d Cir. 1998).............................................30

*Zahra v. Town of Southold,* 48 F.3d 674 (2d Cir. 1995)..............................................25, 36

## STATUTES AND RULES

42 U.S.C. § 1983.............................................................................................1, 12, 36, 38, 40, 42-43

F.R.C.P. 56(c) ................................................................................................4-5

L.R. 56(b) .......................................................................................................3

## CONSTITUTIONAL PROVISIONS

U.S. CONST. Amend. IV ...................................................................................1-7, 9, 11-12, 16, 19, 26, 30, 32, 35, 39, 42-43

U.S. CONST. Amend. XIV ...............................................................................1

## MISCELLANEOUS

CHITTENDEN COUNTY REGIONAL PLANNING COMMISSION, SHELBURNE ROAD CORRIDOR STUDY 1-3 (Dec. 2012) (http://www.ccrpcvt.org/library/studies/Shelburne_Road_Corridor_Study_Final_December_2012.pdf) ............................................................................21

Dodge Stratus, http://wikicars.org/en/Dodge_Stratus...............................................14

Town of Shelburne, Official Website, Police Enforcement,
      http://www.shelburnevt.org/departments/Police_Enforcement.html ...............21

Matt Sutkoski, *Gridlocked: Vermont's Traffic Troubles Trace Their Origin to the
      Region's Early Horse Paths, and Solutions Are Progressing Like Vehicles in
      Rush Hour: Slowly, If at All,* BURLINGTON FREE PRESS (June 24, 2012)
      (http://www.burlingtonfreepress.com/article/20120624/GREEN/306240024/
      Gridlocked) ......................................................................................................21

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Was Police Officer Robert Barrows's use of deadly force to protect himself as well as innocent bystanders and motorists from the danger that Plaintiff Kelley S. O'Brien created with his automobile a reasonable amount of force in compliance with the Fourth Amendment to the U.S. Constitution?

2.      In the alternative, is Officer Barrows entitled to qualified immunity concerning his use of deadly force under these circumstances?

3.      In the alternative, did O'Brien fail to satisfy the essential elements of a failure-to-train claim against the Town of Shelburne ("the Town")?

## STATEMENT OF THE CASE

O'Brien sued Officer Barrows, the Town, Police Chief James Warden, and Town Manager Paul Bohne (collectively "the Defendants") pursuant to 42 U.S.C. § 1983, alleging that Officer Barrows's use of deadly force against him was excessive in violation of the Fourth and Fourteenth Amendments. *See O'Brien v. Barrows,* 2013 WL 486655, *1 (D. Vt. 2013). The federal District Court of Vermont granted the Defendants summary judgment, ruling: (1) the Fourteenth Amendment claim has been abandoned; (2) Officer Barrows is entitled to qualified immunity from the Fourth Amendment excessive-force claim; (3) O'Brien failed to demonstrate the existence of an official Town policy or custom that caused a deprivation of his Fourth Amendment rights; and (4) O'Brien's failure-to-train and

failure-to-supervise claims against Chief Warden and Town Manager Bohne are factually unsubstantiated. *O'Brien,* 2013 WL 486655 at *5-*12.

O'Brien's only legal claims at issue in this appeal are his excessive-force claim against Officer Barrows and his failure-to-train claim against the Town.[1] As demonstrated below, Officer Barrows's use of deadly force to protect himself as well as innocent bystanders and motorists from the danger that O'Brien created with his automobile did not constitute excessive force. In the alternative, even if O'Brien's Fourth Amendment rights have been violated, Officer Barrows would be entitled to qualified immunity and O'Brien cannot satisfy any of the essential elements of his failure-to-train claim against the Town.

## STATEMENT OF THE FACTS

On February 13, 2009, while in the congested parking lot of Jiffy Mart—a convenience store and gas station on Route 7 in Shelburne, Vermont—O'Brien twice struck Officer Barrows with his automobile and attempted to flee in such a manner toward a busy highway during Friday night rush hour that Officer Barrows believed he needed to use deadly force to protect himself as well as innocent

---

[1] O'Brien has abandoned all his other claims. "Ordinarily, failure to include an argument in the appellate brief waives the argument on appeal." *United States v. Zichettello,* 208 F.3d 72, 121 (2d Cir. 2000), *cert. denied sub nom., Lysaght v. United States,* 531 U.S. 1143 (2001). "Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal." *Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir.), *cert. denied,* 525 U.S. 1001 (1998).

bystanders and motorists from danger. The Court below adequately summarized the undisputed facts of this incident as well as those facts that O'Brien attempted to dispute despite his failure to comply with Local Rule 56(b). *See O'Brien,* 2013 WL 486655 at *1-*4. Accordingly, the Defendants incorporate herein by reference the Court's recitation of these facts and, like the Court below, assumes solely for the purposes of this appeal that any factual discrepancies between Officer Barrows's and O'Brien's accounts are to be construed in O'Brien's favor.

## SUMMARY OF THE ARGUMENT

Officer Barrows's use of deadly force to protect himself as well as innocent bystanders and motorists from the danger that O'Brien created with his automobile constituted a reasonable amount of force in compliance with the Fourth Amendment as a matter of law. Any reasonable police officer confronted with a driver who twice struck the officer with his automobile during his attempt to flee through a convenience store's congested parking lot toward a busy highway during rush hour would have interpreted these circumstances to justify using deadly force to stop the fleeing driver. Any factual dispute over where Officer Barrows was standing relative to O'Brien's automobile while Officer Barrows fired his service weapon is rendered irrelevant by the rapidity in which these events unfolded and the fact that no matter where he could have stood he remained within the zone of danger. Moreover, in arguing otherwise, O'Brien downplays the very real threat

3

that his driving posed to the safety of innocent bystanders and motorists, which alone justified Officer Barrows's use of deadly force even if he was out of danger.

In the alternative, Officer Barrows is entitled to the protection from suit afforded by the doctrine of qualified immunity. O'Brien cites no cases presenting materially similar facts, decided before the events about which he complains, and issued by either the U.S. Supreme Court or this Court that would have put Officer Barrows on notice that his use of deadly force under these circumstances was unlawful. Moreover, Officer Barrows acted objectively reasonably at all times.

Finally, O'Brien's failure-to-train claim against the Town fails as a matter of law. He cannot show any defect in the training that Officer Barrows received, any deliberate indifference on the Town's part, or any affirmative link between the foregoing and any violation of his Fourth Amendment rights.

## ARGUMENT

### I. STANDARD OF REVIEW

"Summary judgment [i]s a tool for clearing the calendar of doomed lawsuits." *Weinstock v. Columbia University,* 224 F.3d 33, 40 (2d Cir. 2000). On appeal, this Court "appl[ies] the same standard in reviewing the ruling on such a motion." *Cifra v. General Electric Co.,* 252 F.3d 205, 216 (2d Cir. 2001).

That standard is this: "A motion for summary judgment must be granted where 'there is no genuine issue as to any material fact and . . . the moving party is

4

entitled to a judgment as a matter of law.'" *Harlen Assocs. v. Incorporated Village of Mineola,* 273 F.3d 494, 498 (2d Cir. 2001) (quoting F.R.C.P. 56(c)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009) (internal quotation marks omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 249.

"Claims of excessive force . . . are analyzed under the Fourth Amendment's general reasonableness standard. . . . The reasonableness determination is a pure question of law. . . ." *Crowell v. Kirkpatrick,* 667 F. Supp. 2d 391, 406 (D. Vt. 2009), *aff'd,* 400 Fed. Appx. 592 (2d Cir. 2010). "At the summary judgment stage, however, once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, . . . the reasonableness of [a police officer's] actions . . . is purely a question of law." *Scott v. Harris,* 550 U.S. 372, 381 n.8 (2007).

In addition, "[q]ualified immunity analysis is necessarily objective." *State of Connecticut ex rel. Blumenthal v. Crotty,* 346 F.3d 84, 106 (2d Cir. 2003) (Parker, J.). Whether qualified immunity applies is a question of law. *See Elder v. Holloway,* 510 U.S. 510, 516 (1994); *Siegert v. Gilley,* 500 U.S. 226, 232 (1991); *Martinez v. Simonetti,* 202 F.3d 625, 632 (2d Cir. 2000). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds, Pearson v. Callahan,* 555 U.S. 223 (2009). "Because damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties, the identification and disposal of insubstantial claims by summary judgment is encouraged." *Lee v. Sandberg,* 136 F.3d 94, 101-102 (2d Cir. 1997) (citations and internal quotation marks omitted).

## II. OFFICER BARROWS'S USE OF DEADLY FORCE TO PROTECT HIMSELF AS WELL AS INNOCENT BYSTANDERS AND MOTORISTS FROM THE DANGER THAT O'BRIEN CREATED WITH HIS AUTOMOBILE DID NOT CONSTITUTE EXCESSIVE FORCE UNDER THE FOURTH AMENDMENT

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer. . . ." *Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir. 2010). "[C]laims of excessive force are to be judged under the Fourth

6

Amendment's objective reasonableness standard." *Crowell,* 400 Fed. Appx. at 594 (internal quotation marks omitted); *see Brosseau v. Haugen,* 543 U.S. 194, 197 (2004). "The test for whether the force used was excessive is one of objective reasonableness." *Hunter v. Town of Shelburne,* 2012 WL 4320673, *8 (D. Vt. 2012) (internal quotation marks omitted). "[I]t is plaintiff's burden to prove that the officer acted unreasonably." *Hernandez v. City of New York,* 2004 WL 2624675, *7 (S.D.N.Y. 2004); *see Carey v. Cassista,* 939 F. Supp. 136, 143 (D. Conn. 1996) (plaintiff failed to prove force was excessive).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396 (1989) (internal quotation marks omitted). "This standard evaluates the reasonableness of the force used by considering the totality of the circumstances faced by the officer on the scene." *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir. 1995). "We are, of course, mindful that the reasonableness inquiry does not allow us to substitute our own viewpoint; we must judge the officer's actions from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir. 2006) (Sotomayor, J.) (internal quotation marks omitted). "This means that the calculus of

reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Towsley v. Frank,* 2010 WL 5394837, *7 (D. Vt. 2010) (internal quotation marks omitted).  Consistent with this view, the Eleventh Circuit noted:

> We do not sit in judgment to determine whether an officer made the best or a good or even a bad decision in the manner of carrying out an arrest.  The Court's task is only to determine whether an officer's conduct falls within the outside borders of what is reasonable in the constitutional sense.

*Buckley v. Haddock,* 292 Fed. Appx. 791, 794 (11th Cir. 2008), *cert. denied sub nom., Buckley v. Rackard,* — U.S. —, 129 S. Ct. 2381 (2009).

In *Graham,* the U.S. Supreme Court set forth several factors to be considered in applying the objective-reasonableness test, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham,* 490 U.S. at 396.  "[W]hile *Graham* does list several factors that are relevant to evaluations of excessive force, it does not announce a rigid three-part test that strictly limits the inquiry to those factors." *Crowell,* 667 F. Supp. 2d at 406.  This Court has developed its own list of factors:

> Whether the constitutional line has been crossed depends on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to

8

maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Robison v. Via,* 821 F.2d 913, 923 (2d Cir. 1987) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom., Employee-Officer John, #1765 Badge Number v. Johnson,* 414 U.S. 1033 (1973)).   "Because [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case. . . ."  *Graham,* 490 U.S. at 396 (citations and internal quotation marks omitted).   "The constitutional test for excessive force is necessarily fact specific."   *McCullough v. Antolini,* 559 F.3d 1201, 1207 (11th Cir. 2009).   "Although [an] attempt to craft an easy-to-apply legal test in the Fourth Amendment context is admirable, in the end we must still slosh our way through the factbound morass of 'reasonableness.'"  *Scott,* 550 U.S. at 383.

Deadly force is a special case.  "The intrusiveness of a seizure by means of deadly force is unmatched."   *Tennessee v. Garner,* 471 U.S. 1, 9 (1985). Accordingly, "an officer's decision to use deadly force is objectively reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'"  *Cowan ex rel. Estate of Cooper v. Breen,* 352 F.3d 756, 762 (2d Cir. 2003) (quoting *O'Bert ex rel. Estate of O'Bert v. Vargo,* 331 F.3d 29, 36 (2d Cir. 2003)).   "Probable cause

9

does not require absolute certainty." *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003). "[P]robable cause requires only a probability or substantial chance" of the anticipated action or event occurring. *United States v. Bakhtiari,* 913 F.2d 1053, 1062 (2d Cir. 1990) (internal quotation marks omitted), *cert. denied sub nom., Bakhtiari v. United States,* 499 U.S. 924 (1990). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the [police] officer at the time. . . ." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). "The reasonableness of the officer's decision 'depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force.'" *Cowan,* 352 F.3d at 762 (quoting *Salim v. Proulx,* 93 F.3d 86, 92 (2d Cir. 1996)).

"[A] car can be a deadly weapon." *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.) (citing *United States v. Sanchez,* 914 F.2d 1355, 1359 (9th Cir. 1990), *cert. denied,* 499 U.S. 978 (1991)), *cert. denied,* 504 U.S. 915 (1992); *see Brosseau,* 543 U.S. at 200. "It is indisputable that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon." *United States v. Aceves-Rosales,* 832 F.2d 1155, 1157 (9th Cir. 1987), *cert. denied sub nom., Aceves-Rosales v. United States,* 484 U.S. 1077 (1988). "Attempting to strike police officers with an automobile" is a crime in most jurisdictions. *Cole v. Bone,* 993 F.2d 1328, 1334 (8th Cir. 1993). But even if a driver does not intend to strike an

10

officer, the danger to innocent bystanders and motorists remains just as great. "It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others." *Sykes v. United States,* — U.S. —, 131 S. Ct. 2267, 2274 (2011). Thus, "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Scott,* 550 U.S. at 386. "Deadly force may be used only when the fleeing suspect poses a grave risk of harm to the officer or others." *Cowan,* 352 F.3d at 762 n.4.

Such is the case here. Considering the totality of the circumstances from the perspective of a reasonable police officer on the scene, Officer Barrows's determination that O'Brien posed a grave risk of harm to Officer Barrows as well as innocent bystanders and motorists by means of the deadly weapon that was O'Brien's automobile satisfies the Fourth Amendment's objective-reasonableness test. "Under circumstances like these, '[w]e have . . . consistently upheld an officer's use of force . . . in cases where the decedent used or threatened to use his car as a weapon to endanger officers or civilians immediately preceding the officer's use of deadly force.'" *Terrell v. Smith,* 668 F.3d 1244, 1253 (11th Cir. 2012) (quoting *McCullough,* 559 F.3d at 1207). As more fully demonstrated

11

below, this Court should dispose of O'Brien's excessive-force claim against both Officer Barrows and the Town because the use of deadly force was reasonable.[2]

A.   O'BRIEN POSED A GRAVE RISK OF HARM TO OFFICER BARROWS

O'Brien argues that Officer Barrows was in absolutely no danger at the time he employed deadly force. According to O'Brien, Officer Barrows was either "standing to the driver's side of [O'Brien's automobile] and out of harms way" or could have "simply g[otten] out of the way." O'Brien's Brief at 11-12. In the alternative, O'Brien contends that "even if Officer Barrows was initially in danger," by the time he fired the shot that hit O'Brien "any danger to the officer had entirely dissipated." *Id.* at 12. Solely for the sake of this appeal, Officer Barrows concedes that he was standing to the driver's side of the automobile when he began firing his service weapon and that the automobile had passed him on its way to Route 7 when he fired the shot that hit O'Brien. Nevertheless, despite these concessions, O'Brien has failed to prove his premise that Officer Barrows faced no

---

[2] Ruling that Officer Barrows's use of deadly force was in compliance with the Fourth Amendment necessarily disposes of O'Brien's Section 1983 claim against the Town. If there is no underlying constitutional violation, the Town cannot be held liable. If a police officer "inflicted no constitutional injury on respondent, it is inconceivable that [the municipality] could be liable to respondent." *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *see Curley v. Village of Suffern,* 268 F.3d 65, 71 (2d Cir. 2001) (same). "Because [the plaintiff's] Fourth Amendment right to be free from excessive force was not violated, there is no basis upon which to find [the municipality] liable for the alleged use of excessive force." *Jackson v. City of Bremerton,* 268 F.3d 646, 654 (9th Cir. 2001).

danger whatsoever from O'Brien's automobile. In short, O'Brien's argument fails to take into account "the inherent danger of the situation" confronting Officer Barrows. *Vanvorous v. Burmeister,* 96 Fed. Appx. 312, 314 (6th Cir. 2004).

At the outset, O'Brien completely ignores the fact that his automobile struck Officer Barrows—not once, but twice—during this harrowing incident. First, when O'Brien put his automobile in reverse, it struck Officer Barrows's left leg. *See* JA-55 to 56. And second, while O'Brien was attempting to flee toward Route 7, his automobile struck Officer Barrows's left arm and thumb. *See* JA-66. O'Brien does not genuinely dispute that either of these collisions with Officer Barrows occurred—all he claims is that he failed to observe them. *See* JA-15 ("As [O'Brien] was backing up his vehicle, he did not observe [Officer] Barrows. . . ."); JA-219 ("Although he did not observe it, because he was slid over in his seat, as the Plaintiff was in the process of exiting the parking lot his vehicle struck Officer Barrows in the left arm and thumb.").[3] Officer Barrows's medical records from an emergency-room visit later that evening confirm that he was "experiencing moderate pain," had "moderate tenderness and swelling and [a] small abrasion" on his left forearm, and had "mild tenderness" on his left thumb. JA-176. O'Brien does not dispute that his automobile caused these injuries to Officer Barrows. In

---

[3] All the alcohol in O'Brien's system at the time of the incident—a subsequent blood test revealed that his BAC would have been .240, three times the legal limit of .08—likely impaired his ability to observe his surroundings, including both the location of Officer Barrows and the impacts upon him. *See* JA-410.

*Terrell,* the Eleventh Circuit explained how these circumstances affect the balancing of interests under the objective-reasonableness test:

> The fact that the vehicle made contact with [the police officer's] body alone makes the circumstances of this case far graver and more immediate than the threat of bodily harm arising [in other cases that did not] involve[] the suspect's vehicle hitting the officer. Any misstep by [the officer] could have caused him to fall and be crushed under the weight of the moving vehicle.

*Terrell,* 668 F.3d at 1254. The same is true here. Any misstep by Officer Barrows could have led to his death under the wheels of O'Brien's automobile.[4]

But even if O'Brien's automobile had never actually struck him, Officer Barrows's legitimate concern for his safety justified the use of deadly force. Both Officer Barrows and O'Brien's automobile were located in Jiffy Mart's congested parking lot, with parked vehicles, gasoline pumps, snow banks, and other obstacles. *See O'Brien,* 2013 WL 486655 at *1-*2. According to O'Brien, at the critical moment, Officer Barrows was standing in the entrance/exit area of the parking lot, between O'Brien and his intended escape route to Route 7. *See* JA-67. "[H]e wasn't standing in my way. He was standing to the side of my car. . . . I would say [he was] within arm's reach of my [automobile's] right [*sic*] quarter panel, which would put him on the south side of my car." JA-69. For about five

---

[4] That O'Brien twice struck Officer Barrows with his automobile refutes O'Brien's suggestion that Officer Barrows could have simply gotten out of the way. Surely a reasonable police officer would not stare down an oncoming vehicle weighing about one and a half tons and choose to be injured or possibly killed if there were any escape options available to him. *See* http://wikicars.org/en/Dodge_Stratus.

seconds, O'Brien observed Officer Barrows pointing his service weapon at O'Brien from a distance of about three to six feet away. *See* JA-70 to JA-72. Then O'Brien "slammed on the gas and took off." JA-75. The first shot went through O'Brien's windshield. *See id.* The time between Officer Barrows's first and last shots was about three seconds. *See O'Brien,* 2013 WL 486655 at *3. "This case unfolded very rapidly and under less than ideal conditions." *McCullough,* 559 F.3d at 1207. Officer Barrows was "within a few feet of the moving vehicle as these rapidly unfolding and uncontrolled events transpired." *Terrell,* 668 F.3d at 1255. O'Brien's oncoming automobile could have changed direction in an instant or "could have arced around to run over" Officer Barrows. *Wilkinson v. Torres,* 610 F.3d 546, 552 (9th Cir. 2010). "Given the extremely brief period of time an officer has to react to a perceived threat like this one, it is reasonable to do so with deadly force." *Hathaway v. Baxany,* 507 F.3d 312, 322 (5th Cir. 2007).

Even after O'Brien's automobile had purportedly passed him, the danger to Officer Barrows had not dissipated. In *Long v. Slaton,* 508 F.3d 576 (11th Cir. 2007), *cert. denied,* 555 U.S. 1069 (2008), the Eleventh Circuit ruled that a police officer's decision to shoot a fleeing suspect was objectively reasonable even though the vehicle was moving away from the officer at the time of the shooting:

> Even if we accept that the threat posed by [the suspect] to [the police officer] was not immediate in that the [vehicle] was not moving toward [the police officer] when shots were fired, the law does not

15

require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.

*Id.* at 581. "We note the obvious: [the suspect] could have quickly shifted gears and accelerated toward [the police officer] at any time. An objectively reasonable officer would have known this fact." *Id.* at 581 n.7. A police officer would "ha[ve] no way of knowing whether [the suspect] might reverse the [vehicle], possibly backing over" the officer. *Williams v. City of Grosse Pointe Park,* 496 F.3d 482, 487 (6th Cir. 2007). That was certainly a possibility here. In hockey parlance, hitting Officer Barrows a third time would have constituted a "hat trick."

In *Hathaway,* a police officer who was struck by a vehicle fired his weapon as the vehicle sped away, hitting the driver in the back and killing him. Nevertheless, the Fifth Circuit ruled that the shooting was objectively reasonable:

> This is not an instance . . . where an officer fired after the perception of new information indicating the threat was past. Instead, the entirety of the officer's actions were predicated on responding to a serious threat quickly and decisively. That his decision is now subject to second-guessing—even legitimate second-guessing—does not make his actions objectively unreasonable given the particular circumstances of the shooting.

*Hathaway,* 507 F.3d at 322. In the three seconds between the first and last shots in this case, there was simply no time for Officer Barrows to process any new information about the extent of the danger created by O'Brien's automobile.

But even if Officer Barrows had been mistaken in evaluating the danger he faced, such a mistake would make no difference. "[T]he Fourth Amendment does

16

not require omniscience, and absolute certainty of harm need not precede an act of self-preservation." *Wilkinson,* 610 F.3d at 553 (internal quotation marks omitted). Whether a police officer was "actually out of any danger is not dispositive. We evaluate the reasonableness of [an officer's] decision based on his own knowledge of the circumstances immediately prior to his split-second decision to shoot. . . ." *Costello v. Town of Warwick,* 273 Fed. Appx. 118, 119 (2d Cir. 2008) (internal quotation marks omitted). "Thus, if the analysis focuses on whether an officer made a reasonable mistake of fact that justified his conduct, what is being examined is whether there was a constitutional violation. . . ." *Cowan,* 352 F.3d at 762. "Even if in hindsight the facts show that [the officer] perhaps could have escaped unharmed, an objectively reasonable law enforcement officer could well have perceived that the moving vehicle was being used as a deadly weapon. . . ." *Terrell,* 668 F.3d at 1255 (citations and internal quotation marks omitted).

O'Brien claims that he had no intent to harm Officer Barrows and that the whole incident was just one big misunderstanding, but O'Brien's true intent behind his actions is irrelevant. "That [a suspect] may not have *intended* to injure [a police officer] or anyone else is immaterial." *Williams,* 496 F.3d at 487 (emphasis in original). "[T]he onus is not on the police to discern that intent. They must deal with the objective facts before them." *Woodward v. Town of Brattleboro,* 2006

17

WL 36906, *8 (D. Vt. 2006). From Officer Barrows's viewpoint, O'Brien was a danger, and Officer Barrows acted accordingly. *See Williams,* 496 F.3d at 487.

In *Greenwald v. Town of Rocky Hill,* 2011 WL 4915165 (D. Conn. 2011), the Court ruled that it was objectively reasonable for police to shoot an armed suspect even though there was a genuine factual dispute over whether the suspect had aimed his firearm at the police. The Court held:

> After crediting [the suspect's] version of the facts which assumes that [the suspect] was not actively aiming his rifle at the Officers, the Court finds that [the police officer] made a reasonable mistake of fact when he concluded that [the suspect] was aiming his shotgun at him and [a fellow officer] which justified his decision to use deadly force.

*Id.* at *8. Whether the deadly weapon at issue is a firearm or an automobile, the reasoning remains the same. *See Waterman v. Batton,* 393 F.3d 471, 479 n.9 (4th Cir. 2005). Whether or not O'Brien was aiming his automobile at Officer Barrows, it was objectively reasonable for him to believe that O'Brien posed a grave risk of harm. "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm." *Elliott v. Leavitt,* 99 F.3d 640, 641 (4th Cir. 1996), *cert. denied,* 521 U.S. 1120 (1997). Accordingly, O'Brien's excessive-force claim fails.

18

B.   O'BRIEN POSED A GRAVE RISK OF HARM TO INNOCENT
     BYSTANDERS AND MOTORISTS

"Protecting the innocent public from risks that are not remote is a government interest." *Long,* 508 F.3d at 582.  Indeed, the "governmental interest in ensuring public safety" is "paramount." *Scott,* 550 U.S. at 383.  "The law governing whether an officer acted reasonably is the same whether the officer sought to protect himself or others." *Smith,* 954 F.2d at 348.  The risk to innocent bystanders and motorists posed by a suspect's driving "standing alone" can justify the use of deadly force to stop the driver. *Scott v. Clay County, Tennessee,* 205 F.3d 867, 877 n.16 (6th Cir.), *cert. denied,* 531 U.S. 874 (2000).  Thus, even if a police officer is in no immediate danger, "a significant threat of physical injury to numerous others" will justify the use of deadly force against a fleeing driver. *Smith,* 954 F.2d at 346 (internal quotation marks omitted).  "[T]he courts found no Fourth Amendment violation when an officer shot a fleeing suspect who presented a risk to others." *Brosseau,* 543 U.S. at 200; *see Martin v. Dishong,* 102 Fed. Appx. 780, 782-83 (4th Cir. 2004); *Gallegos v. Freeman,* 291 P.3d 265, 274 (Wash. Ct. App. 2013), *review denied,* — P.3d — (Wash. 2013) (table).

O'Brien argues that "[n]o 'others' were in any immediate danger from [his] car. . . ."  O'Brien's Brief at 12.  Only by ignoring the evidence in the record can O'Brien fail to appreciate, even in hindsight, the extreme risk to innocent bystanders posed by his automobile.  According to his own testimony, the Jiffy

19

Mart parking lot "was busy and congested."  JA-44.  He continued: "[T]his is a very busy place and this was, like, rush hour Friday. . . ."  JA-65.  Though he failed to observe whether there were any pedestrians in the parking lot, there was at least one: "A customer at the Jiffy Mart, Melissa Clark, provided a third account, which largely corroborates Officer Barrows' account."  *O'Brien,* 2013 WL 486655 at *3 n.3.  Clark was close enough to witness these events as they unfolded.  Certainly her safety counts for more in the balance of interests than O'Brien now affords her.

O'Brien also argues, "Nor, despite the District Court's reference to rush hour traffic on Route 7, is there any evidence of record that O'Brien was poised to crash into a line of traffic on Route 7 absent the use of deadly force by [Officer] Barrows."  O'Brien's Brief at 21.  Again, only by ignoring the evidence in the record can he fail to appreciate, even in hindsight, the extreme risk to innocent motorists posed by his automobile.  There was indeed a line of traffic stalled in the northbound lane of Route 7, which O'Brien avoided only by veering into oncoming traffic in the southbound lane.  Jeanne Farrell, the driver of the car that O'Brien sideswiped, testified as follows:

> I was heading southbound and the northbound lane was backed up
> because it had stopped for the red light there.  So as I was driving
> along, on my left was a wall of cars.  And then I saw, coming very
> fast without headlights on, a car in my lane coming as if to head-on
> with me. . . .  Well unfortunately, because of snow banks and trees
> and signposts, because it's the center of Shelburne, I got most of my
> car out of his way and so had a, you know, big side-swipe.

20

JA-389. Her husband, Stephen Reinhold, confirmed her account. *See* JA-393 to JA-394. O'Brien cannot dispute these facts because he claims to have blacked out at the time. *See* JA-18 ¶ 59. Thankfully, neither Farrell nor Reinhold were hurt.

As Farrell indicated, this incident took place in downtown Shelburne. According to the Town's official website, "The Town of Shelburne is directly impacted by [an] increase [in traffic rate] due to the bisecting, heavily traveled U.S. Route 7 (Shelburne Road)."[5] Shelburne Road has a reputation as being one of the most traffic-snarled thoroughfares in Chittenden County, which in turn has higher traffic volumes than other parts of Vermont. *See* Matt Sutkoski, *Gridlocked: Vermont's Traffic Troubles Trace Their Origin to the Region's Early Horse Paths, and Solutions Are Progressing Like Vehicles in Rush Hour: Slowly, If at All,* BURLINGTON FREE PRESS (June 24, 2012).[6] A study conducted of a segment of Shelburne Road to the north of the Town found: "Congestion is worse during the afternoon peak, especially in the northbound direction." CHITTENDEN COUNTY REGIONAL PLANNING COMMISSION, SHELBURNE ROAD CORRIDOR STUDY 1-3 (Dec. 2012).[7] This is precisely the time and direction O'Brien was heading when he fled

---

[5]http://www.shelburnevt.org/departments/Police_Enforcement.html.

[6]http://www.burlingtonfreepress.com/article/20120624/GREEN/306240024/Gridlocked.

[7]http://www.ccrpcvt.org/library/studies/Shelburne_Road_Corridor_Study_Final_December_2012.pdf.

the Jiffy Mart parking lot. Had Officer Barrows not put a stop to this flight, O'Brien likely would have plowed into a pileup of rush-hour commuters at the first traffic light. O'Brien "posed an imminent threat of serious physical harm to innocent motorists as well as" Officer Barrows himself. *Cole,* 993 F.2d at 1333. O'Brien's "danger to others was self-evident." *Smith,* 954 F.2d at 348.

A case O'Brien relies on, *Scott v. Edinburg,* 346 F.3d 752 (7th Cir. 2003), is particularly instructive here. The defendant police officer left his personal vehicle in a gas station with the keys in the ignition while he went in search of something to eat. *See id.* at 754. As a thief fled the gas station's parking lot driving the vehicle, the officer fired his revolver, killing the thief. *See id.* There was a factual dispute over whether or not two bystanders were directly in the vehicle's path or merely in the general vicinity. *See id.* Nevertheless, the Seventh Circuit affirmed summary judgment in the officer's favor. *See id.* The officer "knew that [the thief] was escaping at a high rate of speed through a parking lot with twelve to fourteen bystanders and demonstrating little concern for anyone's safety. These facts support [the officer's] argument that the use of deadly force was permissible to protect third parties in danger." *Id.* at 758. The Court deemed the factual dispute over the location of the bystanders to be immaterial:

> [T]his conflict does not preclude summary judgment because the threatened individuals need not have been placed in the direct path of the threat. Deadly force may be exercised is the suspect's actions

22

place the officer, his partner, or those in the *immediate vicinity* in imminent danger of death or serious bodily injury.

*Id.* at 759 (internal quotation marks omitted; emphasis in original). In *Waterman,* another case O'Brien relies on, the Fourth Circuit explained the Seventh Circuit's *Scott* decision as follows: "The court specifically rejected the contention that the fact that no bystanders were in the direct path of the vehicle precluded the use of deadly force when several people were in the immediate vicinity of the path." *Waterman,* 393 F.3d at 480 (citing *Scott,* 346 F.3d at 759).

Here, Clark was in the immediate vicinity of the path that O'Brien's automobile took, while Farrell and Reinhold were in the direct path and were nearly run off the road, not to mention all the other unnamed Jiffy Mart patrons and motorists waiting at the red light on Route 7 who were in harm's way. With this many innocent people in danger from O'Brien's automobile, this Court should "have little difficulty in concluding it was reasonable for [the police officer] to take the action that he did." *Scott,* 550 U.S. at 384. "Even if [the police officer's] decision to fire his weapon was not the best available means of preventing [the suspect's] escape and preventing potential harm to others, we conclude that [the officer's] use of deadly force was not an unreasonable means of doing so." *Long,* 508 F.3d at 583. Accordingly, O'Brien's excessive-force claim fails.

23

## III. IN THE ALTERNATIVE, OFFICER BARROWS IS ENTITLED TO QUALIFIED IMMUNITY CONCERNING HIS USE OF DEADLY FORCE UNDER THESE CIRCUMSTANCES

Police officers "should not be held personally liable" for reasonable mistakes that are "inevitable" in their line of work. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. Al-Kidd,* — U.S. —, 131 S. Ct. 2074, 2085 (2011). This Court stated:

> Judge [Learned] Hand explained that "to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake. . . ." He emphasized the need to avoid "subject[ing] those who try to do their duty to the constant dread of retaliation."

*Amore v. Novarro,* 624 F.3d 522, 529-30 (2d Cir. 2010) (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied,* 339 U.S. 949 (1950) (Hand, J.)) (citations omitted). "The concern of the [qualified] immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. . . . If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to qualified immunity." *Saucier,* 533 U.S. at 205. Such mistakes may consist of "a mistake of law, a mistake of fact, or a mistake of mixed questions of law and fact." *Pearson,* 555 U.S. at 231 (internal quotation marks omitted). "Assuming that [the officer] erred, error is what is

24

indulged by qualified immunity." *Caceres v. Port Authority of New York & New Jersey,* 631 F.3d 620, 622 (2d Cir. 2011).

"Whether a defendant actually violated a plaintiff's rights is not the central issue." *Zahra v. Town of Southold,* 48 F.3d 674, 686 (2d Cir. 1995). "The doctrine of qualified immunity 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sanborn v. Jennings,* 2013 WL 4040391, *2 (D. Vt. 2013) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see Wilson v. Layne,* 526 U.S. 603, 609 (1999). Thus:

> [W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether the right was clearly established at the time of the alleged violation.

*Tracy,* 623 F.3d at 96. Further:

> An officer is not put on notice that his conduct would be clearly unlawful if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.

*Sanborn,* 2013 WL 4040391 at *2.

As Judge Parker observed, "The presumption in favor of finding qualified immunity is necessarily high, protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Blumenthal,* 346 F.3d at 102 (quoting *Malley v.*

25

*Briggs,* 475 U.S. 335, 341 (1986)). "Normally, it is only the 'plainly incompetent or those who knowingly violate the law'—those who are not worthy of the mantle of office—who are precluded from claiming the protection of qualified immunity." *Moore v. Andreno,* 505 F.3d 203, 214 (2d Cir. 2007) (quoting *Malley*). Once a defendant raises qualified immunity as a defense, the plaintiff "has the burden of pleading facts showing a violation of a constitutional right and demonstrating that the right was clearly established." *Hubacz v. Protzman,* 2013 WL 1386287, *8 (D. Vt. 2013); *see Terrell,* 668 F.3d at 1250; *McCullogh,* 559 F.3d at 1205; *Long,* 508 F.3d at 584; *Hathaway,* 507 F.3d at 319; *Gallegos,* 291 P.3d at 631; *Sprague v. Nally*, 2005 VT 85 ¶ 4 n.3, 178 Vt. 222, 225 n.3 (2005).

Assuming *arguendo* that O'Brien can show the violation of his Fourth Amendment rights, he "must also show that the right violated was clearly established." *Finigan v. Marshall,* 574 F.3d 57, 61 n.3 (2d Cir. 2009). "A right is clearly established when [t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997) (internal quotation marks omitted). "We have repeatedly told courts . . . not to define clearly established law at a high level of generality." *Al-Kidd,* 131 S. Ct. at 2084. "The objective element of this test requires the court to look beyond the generalized constitutional protection . . . and to determine whether the law is clearly established in a more

26

particularized sense." *Kerman v. City of New York,* 261 F.3d 229, 237 (2d Cir. 2001). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640 (citations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd,* 131 S. Ct. at 2083. Conversely, "ambiguity in the law" calls for the application of qualified immunity. *Koch v. Town of Brattleboro,* 287 F.3d 162, 168 (2d Cir. 2002); *see Goldberg v. Town of Glastonbury,* 453 Fed. Appx. 40, 42 (2d Cir. 2011). This Court explained:

> "To determine whether a right is clearly established, we look to (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question[;] and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful."

*Ladd v. Thibault,* 402 Fed. Appx. 618, 620 (2d Cir. 2010) (quoting *Scott v. Fischer,* 616 F.3d 100, 105 (2d Cir. 2010)), *cert. denied,* — U.S. —, 131 S. Ct. 1697 (2011). As indicated in *Ladd,* factual, temporal, and hierarchical components all play a role in this legal analysis.

First, the factual component: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

27

*Saucier,* 533 U.S. at 202 (2001). "[T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau,* 543 U.S. at 198 (internal quotation marks omitted). "Not surprisingly, . . . 'this area is one in which the result depends very much on the facts of each case.'" *Terrell,* 668 F.3d at 1257 (quoting *Brosseau,* 543 U.S. at 201). "Results in these kinds of cases—involving reasonableness and balancing—are extremely fact dependent." *Long,* 508 F.3d at 585. "[T]here must be some parallel or comparable fact pattern to alert an officer that a series of actions would violate an existing constitutional right." *Gallegos,* 291 P.3d at 271 (internal quotation marks omitted). "[I]n short, we must consider whether a reasonable officer could have believed that the specific action taken by [the officer] was foreclosed by clearly established law." *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir. 2002).

Next is the temporal component: "Qualified immunity . . . protects government officials from liability they might otherwise incur due to unforeseeable changes in the law governing their conduct." *Sound Aircraft Services, Inc. v. Town of East Hampton,* 192 F.3d 329, 334 (2d Cir. 1999). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau,* 543 U.S. at 198. "If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could

28

he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow,* 457 U.S. at 818. "[T]his question is not answered by reference to how courts or lawyers might have understood the state of the law." *Walczyk v. Rio,* 496 F.3d 139, 154 (2d Cir. 2007). "A reasonable police officer cannot be expected to anticipate developments in the law." *Kerman,* 261 F.3d at 237; *see Pierson,* 386 U.S. at 557. "[A] peace officer cannot be charged with the responsibility of predicting the future course of constitutional law." *Tucker v. Maher,* 497 F.2d 1309, 1313 (2d Cir.), *cert. denied,* 419 U.S. 997 (1974). "Indeed, [t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Moore,* 505 F.3d at 214 (internal quotation marks omitted). "[A]mbiguity in the law" at the time of the alleged violation triggers qualified immunity even if a particular right is clearly established after the fact, in later-decided cases. *Rivers v. Fischer,* 390 Fed. Appx. 22, 24 (2d Cir. 2010). Decisions "that postdate the conduct in question . . . could not given fair notice to [the officer] and are of no use in the clearly established inquiry." *Brosseau,* 543 U.S. at 200 n.4.

And the hierarchical component distinguishes between controlling and persuasive authority. "'[O]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right

is clearly established.'" *Crowell,* 400 Fed. Appx. at 594 (quoting *Moore v. Vega,* 371 F.3d 110, 114 (2d Cir. 2004)); *see Bourn v. Bull,* 2013 WL 1285858, *6 (D. Vt. 2013). "Typically this Court puts significant weight on whether or not the law was governed by controlling precedent of this Circuit." *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir. 1998). In contrast, absent controlling precedent, "[p]olice officers are entitled to rely on existing lower court cases without facing personal liability for their actions." *Pearson,* 555 U.S. at 244-45.

Finally, there is the "objective reasonableness test." *Lennon,* 66 F.3d at 420. The reasonableness analysis for qualified-immunity purposes is not "merely duplicative" of the reasonableness analysis under the Fourth Amendment. *Saucier,* 533 U.S. at 203. Courts must consider, for qualified-immunity purposes, whether a police officer "'reasonably' acted unreasonably." *Anderson,* 483 U.S. at 643. Any argument that a second reasonableness analysis is not required when a police officer asserts qualified immunity for alleged Fourth Amendment violations "is foreclosed by the fact that we have previously extended qualified immunity to officials who were alleged to have violated the Fourth Amendment." *Id.*

When applying the objective-reasonableness test, "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau,* 543 U.S. at 198. "'[E]ven if the right at issue was clearly

30

established in certain respects, . . . an officer is still entitled to qualified immunity
if officers of reasonable competence could disagree on the legality of the action at
issue in its particular factual context.'" *Crowell,* 400 Fed. Appx. at 594 (quoting
*Walczyk,* 496 F.3d at 154). Thus, "[e]ven defendants who violate constitutional
rights enjoy a qualified immunity that protects them from liability for damages
unless it is further demonstrated that their conduct was unreasonable under the
applicable standard." *Davis v. Scherer,* 468 U.S. 183, 190 (1984). "Under this
rubric, the dispositive question is whether it was objectively legally reasonable, at
the time of the challenged action, for the government official to have believed his
actions were lawful." *Rathbun v. DiLorenzo,* 438 Fed. Appx. 48, 51 (2d Cir.
2011). "Public officials will not be held liable for discretionary actions that 'could
reasonably have been thought consistent with the rights they are alleged to have
violated.'" *Krause v. Penny,* 837 F.2d 595, 597 (2d Cir. 1988) (quoting *Anderson,*
483 U.S. at 638). Accordingly, summary judgment should be granted in favor of
a police officer on qualified-immunity grounds when:

> [N]o reasonable jury, looking at the evidence in the light most
> favorable to, and drawing all inferences most favorable to, the
> plaintiffs, could conclude that it was objectively unreasonable for the
> defendant to believe that he was acting in a fashion that did not clearly
> violate an established federally protected right. . . . An officer's
> actions are objectively unreasonable when no officer of reasonable
> competence could have made the same choice in similar
> circumstances. Thus, if the court determines that the only conclusion
> a rational jury could reach is that reasonable officers would disagree

31

about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate.

*Lennon,* 66 F.3d at 420-21 (citations, alterations, internal quotation marks omitted).

"If a court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Sanborn,* 2013 WL 4040391 at *2.

As demonstrated above, Officer Barrows's use of deadly force did not constitute excessive force or violate the Fourth Amendment. But even if O'Brien could show that his rights have been violated, Officer Barrows would still be entitled to qualified immunity. He is unaware of any case law that satisfies the factual, temporal, and hierarchical components of the qualified-immunity analysis. In other words, O'Brien can cite no cases presenting materially similar facts, decided before the events about which they complain, and issued by either the U.S. Supreme Court or this Court that would have put him on notice that his use of deadly force under the circumstances was unlawful. "No decision of this Court [or the Second Circuit] has found a Fourth Amendment violation on facts even roughly comparable to those present in this case." *Ryburn v. Huff,* — U.S. —, 132 S. Ct. 987, 990 (2012). "[I]t would gravely distort the doctrine of qualified immunity to hold that a[n] official should 'fairly be said to "know" that the law forb[ids] conduct not previously identified as unlawful.'" *Doninger v. Niehoff,* 642

32

F.3d 334, 347 (2d Cir.) (quoting *Harlow,* 457 U.S. at 818), *cert. denied,* — U.S. — , 132 S. Ct. 499 (2011).  All O'Brien can cite are cases that set forth rights "as a broad general proposition," which is insufficient.  *Brosseau,* 543 U.S. at 198.  "The requirement, after all, is that the law be clearly established, not simply possibly established or even probably established."  *Swanson v. Powers,* 937 F.2d 965, 968 (4th Cir. 1991) (citations omitted), *cert. denied,* 502 U.S. 1031 (1992).

*Graham* clearly establishes a right to be free from excessive force that is "cast at a high level of generality."  *Brosseau,* 543 U.S. at 199.  "*Garner* says something about deadly force but not everything, especially when facts vastly different from *Garner* are presented. . . .  '*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute "deadly force."'"  *Long,* 508 F.3d at 580 (quoting *Scott,* 550 U.S. at 382).  "[B]ecause *Graham* and *Garner* 'are cast at a high level of generality,' these standards do not, except in 'an obvious case,' provide the fair warning to a police officer that is necessary to defeat a claim of qualified immunity."  *Gallegos,* 291 P.3d at 272 (quoting *Brosseau,* 543 U.S. at 199).  In addition, *O'Bert* and *Cowan* "are distinguishable from this case."  *Woodward,* 2006 WL 36906 at *6.  Neither *O'Bert* nor *Cowan* involved any danger to others and thus "the officer's use of force could be justified, if at all, only by the threat posed to the officer's own safety."  *Gallegos,* 291 P.3d at 634-35 (distinguishing *Cowan*).

O'Brien cites several decisions from other jurisdictions that cannot be used to meet his burden of proving the existence of a clearly established right. *See* O'Brien's Brief at 20-21. For one thing, none of these decisions are binding authority. One of these decisions—*Lytle v. Bexar County, Texas,* 560 F.3d 404 (5th Cir. 2009), *cert. denied sub nom., Bexar County, Texas v. Lytle,* 559 U.S. 1007 (2010)—was decided after the incident in question. Many of these decisions are distinguishable on their facts. In *Lytle,* taking the plaintiff's facts as true, the fleeing car at issue had to have been "three or four houses away" from the police officer when he fired, much farther than the distances at issue here. *Lytle,* 560 F.3d at 413. In addition, in *Lytle,* "there were no children or bystanders in the path of the vehicle, indicating that no one was in immediate danger." *Id.* at 416. In *Abraham v. Raso,* 183 F.3d 279 (3d Cir. 1999), video footage and physical evidence contradicted the police officer's story, thereby necessitating a trial to resolve certain issues of fact. *See id.* at 284-85. In *Waterman,* the police officers "argue[d] only that the use of deadly force was justified by the threat [the plaintiff] posed to them and their fellow officers—as opposed to the general public," so the Court confined its analysis to that issue alone. *Waterman,* 393 F.3d at 477. Moreover, the *Waterman* Court ultimately granted the officers qualified immunity due to the lack of clearly established law at the time of the incident in question. *See id.* at 482. The Seventh Circuit's *Scott* decision supports Officer Barrows's

34

position rather than O'Brien's because it found no Fourth Amendment violation based on the danger to others. *See Scott,* 346 F.3d at 754. Likewise, *Ellis v. Wynalda,* 999 F.2d 243 (7th Cir. 1993)—to the extent it is relevant at all because it did not involve a motor vehicle—is more helpful to Officer Barrows than it is to O'Brien. "If Ellis had threatened the officer with a weapon and then run off with the weapon, a reasonable officer in Wynalda's place could believe that Ellis created a danger to the community." *Id.* at 247. That is what happened here—O'Brien's automobile was that weapon.

Finally, O'Brien cannot show that Officer Barrows's conduct was anything other than objectively reasonable at all times. "But even viewing the evidence in the light most favorable to [the plaintiff], there is simply nothing in the record creating a disputed issue of fact as to the *objective reasonableness* of any such [conduct]." *Doninger,* 642 F.3d at 349 (emphasis in original). The best that O'Brien could hope for is a jury to conclude that reasonable police officers could disagree about the legality of Officer Barrows's conduct. Officer Barrows "deserves qualified immunity even assuming—contrafactually—that his [use of deadly force] violated the Fourth Amendment." *Al-Kidd,* 131 S. Ct. at 2085.

"[A]t worst," Officer Barrows's "acts fell within the 'hazy border between excessive and acceptable force.'" *Long,* 508 F.3d at 585 (quoting *Saucier,* 533

U.S. at 206). Accordingly, the District Court's grant of summary judgment to Officer Barrows on qualified-immunity grounds should be affirmed.

## IV. IN THE ALTERNATIVE, O'BRIEN CANNOT SATISFY ANY OF THE ESSENTIAL ELEMENTS OF A FAILURE-TO-TRAIN CLAIM AGAINST THE TOWN

A municipality may be held liable only for its own actions and not the actions of its employees. *See Board of Commissioners of Bryan County v. Brown,* 520 U.S. 397, 403 (1997); *Monell v. Department of Social Services,* 436 U.S. 658, 690-94 (1978). "It is well established that a municipality may not be held liable solely on the basis of *respondeat superior*." *Powell v. Gardner,* 891 F.2d 1039, 1045 (2d Cir. 1989) (citing *Monell*). "[A] municipality may only be found liable under 42 U.S.C. § 1983 when the alleged unlawful action was implemented or executed pursuant to a government policy or custom." *Bourn v. Town of Bennington,* 2012 WL 2396875, *3 (D. Vt. 2012) (internal quotation marks omitted). "To hold a municipality liable in such an action, 'a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zahra,* 48 F.3d at 685 (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)).

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually

36

responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-80 (1986) (emphasis in original). "Aware that governmental bodies can act only through natural persons, the Court concluded that these governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 122 (1988). Such policies must result from "a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). A single action by a municipal employee below the policymaking level cannot be used to infer the existence of an unconstitutional policy or custom. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) (police officer). "The Plaintiff bears the burden of demonstrating the existence of such a policy or practice." *Francis v. Hartford Police Department,* 2012 WL 4815596, *2 (D. Conn. 2012). One court within the Second Circuit explained:

> An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees.

*Brady v. Syracuse Police Department,* 2013 WL 286281, *3 (N.D.N.Y.), *report & recommendation adopted,* 2013 WL 286283 (N.D.N.Y. 2013).

37

There must also be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385; *see Taylor v. Brentwood Union Free School District,* 143 F.3d 679, 686 (2d Cir. 1998), *cert. denied sub nom., Taylor v. Rooney,* 525 U.S. 1139 (1999). "The 'causation' requirement of § 1983 is a matter of statutory interpretation rather than of common tort law." *City of Springfield, Massachusetts v. Kibbe,* 480 U.S. 257, 269 (1987). Thus, concepts such as "proximate cause" from state tort law are of limited utility in Section 1983 actions. Even if a municipal policy or custom "proximately caused" an injury, the injury could still be "too remote a consequence" of that policy or custom to impose Section 1983 liability upon the municipality. *Martinez v. State of California,* 444 U.S. 277, 285 (1980). This Court explained:

> [T]his element of causation has two components. The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection—an "affirmative link"— between the policy and the deprivation of his constitutional rights.

*Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985) (quoting *Tuttle,* 471 U.S. at 824 n.8), *cert. denied,* 480 U.S. 916 (1987). A plaintiff bears the burden of proving this causal connection as well. *See Moffett v. Town of Poughkeepsie,* 2012 WL 3740724, *4 (S.D.N.Y. 2012). Thus:

> The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the alleged injury. That is, a plaintiff must show that the municipal action was

38

> taken with the requisite degree of culpability and must demonstrate a
> direct causal link between the municipal action and the deprivation of
> federal rights.

*Bryan County,* 520 U.S. at 404 (emphasis in original; citations omitted). "To show

an unconstitutional policy or custom, plaintiff must identify the policy or custom,

connect the policy or custom with the government entity itself, and show that the

particular injury was incurred because of the execution of that policy." *Wilson v.*

*Tillman,* 613 F. Supp. 2d 1254, 1266 (S.D. Ala. 2009). A municipal policy or

custom can be the moving force behind an alleged injury when, at a minimum, a

municipal employee below the policymaking level violates the plaintiff's rights "in

furtherance of municipal policies." *Roe v. City of Waterbury,* 542 F.3d 31, 40 (2d

Cir. 2008), *cert. denied,* 558 U.S. 933 (2009).

Absent evidence satisfying all of these essential elements, Section 1983

claims against municipalities must fail. *See Connick v. Thompson,* — U.S. —, 131

S. Ct. 1350, 1358 (2011). "[B]ald assertions and conclusions of law" will not save

such claims. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996). "The mere assertion,

however, that a municipality has such a custom or policy is insufficient in the

absence of allegations of fact tending to support, at least circumstantially, such an

inference." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993). Even if

O'Brien could show that his Fourth Amendment rights have been violated by

Officer Barrows's use of deadly force, O'Brien cannot produce evidence to show the existence of an official Town policy or custom that caused any such violation.

O'Brien's only Section 1983 claim against the Town consists of his allegation that the Town failed to properly train Officer Barrows in the use of deadly force. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick,* 131 S. Ct. at 1359. Such a claim requires O'Brien to show deliberate indifference by the Town. *Canton,* 489 U.S. at 388. Establishing liability for deliberate indifference is extremely difficult because it is premised on a municipality's failure to act. *See Bryan County,* 520 U.S. at 406; *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998). The U.S. Supreme Court explained:

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. . . . A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick,* 131 S. Ct. at 1360 (citations and internal quotation marks omitted).

40

O'Brien complains that "Town police officers merely read the Town's use of deadly force policy at in-service trainings, without any classroom training or testing to ensure that the policy has been read and understood." O'Brien's Brief at 26. He argues that "[t]his is tantamount to a lack of training in the constitutional limits on the use of deadly force, and brings this case within the 'patently obvious' failure to train exception" theorized in *Canton.* *Id.* But having failed to cite a single case suggesting that classroom training and/or testing is a "patently obvious" necessity in training police officers in the use of deadly force—as opposed to the methods the Town actually used—his argument fails out of hand.

Moreover, O'Brien ignores the undisputed fact that, in addition to reading the Town's deadly-force policy at in-service trainings, all Town police officers receive "basic training at the Vermont Police Academy, as well as in-service firearms training on a semi-annual basis," during which they "receive training on the constitutional limits of deadly force," and are required to demonstrate firearms proficiency while participating in scenario-based training. *O'Brien,* 2013 WL 486655 at *10; *see* JA-423 ¶ 11, JA-426 ¶ 19. The record demonstrates that Officer Barrows did indeed receive adequate training. *See Bourn v. Gauthier,* 2011 WL 1211569, *6 (D. Vt. 2011). The Town has made "a *prima facie* showing that the police officers were adequately trained" and O'Brien fails to show any

41

defect in Officer Barrows's training. *Eckardt v. City of White Plains,* 930 N.Y.S.2d 22, 26 (N.Y. App. Div. 2011) (citations omitted).

In addition, "Plaintiff has not produced any specific facts to indicate that [the Town's] alleged failure to enforce its regulations regarding excessive force to prevent any harm to Plaintiff was the result of a conscious choice, as opposed to mere negligence." *Beckford v. City of New Haven,* 2011 WL 6153182, *5 (D. Conn. 2011). In other words, O'Brien offers nothing to suggest that the Town acted with deliberate indifference. He points to no pattern of similar constitutional violations by untrained employees. "Rather, it is undisputed that no SPD officer has used deadly force in the past twenty-five years." *O'Brien,* 2013 WL 486655 at *10. Thus, even if O'Brien could show that Officer Barrows violated his Fourth Amendment rights, his Section 1983 claim against the Town would fail. "Here, even assuming the facts make out a constitutional violation, there is but proof of this one incident, which cannot, by itself, establish a custom, policy, or practice." *Bash v. Patrick,* 608 F. Supp. 2d 1285, 1302 (M.D. Ala. 2009). "We do not believe that a failure to implement and train officers on a deadly force policy that covers the circumstances of this case constitutes deliberate indifference to [the fleeing suspect's] rights." *Long,* 508 F.3d at 585 n.12.

Finally, O'Brien makes no attempt to establish an affirmative link between any alleged deliberate indifference on the Town's part and any alleged violation of

his Fourth Amendment rights. Having failed to make the attempt, thereby waiving any right to do so, his failure-to-train claim remains fatally defective. *See Zichettello,* 208 F.3d at 121; *Norton,* 145 F.3d at 117.

In sum, O'Brien's Section 1983 claim against the Town is "deficient" because there are no "facts sufficient to show that the violation of his constitutional rights resulted from a municipal custom or policy." *Costello v. City of Burlington,* 632 F.3d 41, 49 (2d Cir. 2011) (internal quotation marks omitted). "The plaintiff has not identified an unconstitutional policy or custom which has been adopted by [municipal] decision-makers, nor has he presented a sufficiently direct causal link between his alleged injuries and municipal conduct." *Treon v. Whipple,* 212 F. Supp. 2d 285, 289 (D. Vt. 2002). Accordingly, the Court's grant of summary judgment to the Town on O'Brien's failure-to-train claim should be affirmed.

## CONCLUSION

WHEREFORE, for any and all of the reasons stated above, summary judgment in favor of the Defendants should be affirmed, dismissing O'Brien's claims in their entirety with prejudice.

RESPECTFULLY submitted on this __17th__ day of September 2013, by:


 /s/ James F. Carroll
James F. Carroll, Esq.
English, Carroll & Boe, PC
64 Court Street
Middlebury, VT 05753
(802) 388-6711
jcarroll@64court.com

Attorney for Defendant-Appellee Barrows



 /s/ Nancy G. Sheahan
Nancy Goss Sheahan, Esq.
McNeil, Leddy & Sheahan
271 South Union Street
Burlington, VT 05401
(802) 863-4531
nsheahan@mcneilvt.com



 /s/ Kevin J. Coyle
Kevin J. Coyle, Esq.
McNeil, Leddy & Sheahan
271 South Union Street
Burlington, VT 05401
(802) 863-4531
kcoyle@mcneilvt.com

Attorneys for the Defendant-Appellee Town

c:     Tara J. Devine, Esq.

44

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| KELLEY S. O'BRIEN, | ) | |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| v. | ) Docket No. 13-872-cv | |
| | ) | |
| ROBERT BARROWS, *et al.,* | ) | |
| | ) | |
| Defendant-Appellees. | ) | |

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF
APPELLATE PROCEDURE 32(a)(7)(b)**

I, Kevin J. Coyle, Esq., hereby certify that this Brief of Appellee is written in

14-point Times New Roman typeface and contains 11,271 words.

Dated at Burlington, Vermont, this 17th day of September 2013.


McNeil, Leddy & Sheahan


By:   /s/ Kevin J. Coyle
      Kevin J. Coyle, Esq.
      271 South Union St.
      Burlington, VT  05401
      (802) 863-4531